## Furste v. Dixie Traction Co.

Feb. 25, 1941.

As Modified on Denial of Rehearing April 29, **1941.**

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellant.

Stephens L. Blakely for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The question presented is whether a common carrier of passengers by motorbus, operating between fixed termini, both intrastate and interstate, under certificates issued by the Interstate Commerce Commission and the Division of Motor Transportation of Kentucky, and complying with the statutes relating to such operations, is required to register its busses with a county court clerk under the provisions of Section 2739g-2a et seq. of the Statutes. The circuit court adjudged that the appellee, Dixie Traction Company, which operates a system of busses in Kenton, Campbell and Boone Counties, Kentucky, and into Cincinnati, does not have to comply with those statutes. The county clerk of Kenton County challenges the correctness of that declaratory judgment. The Attorney General, representing the appellant, sub-

mits that its effect is to deprive the public of the protection of the police regulations afforded by the registration of motorcars with the county clerk and to exempt the owners from the payment of the 3 percent sales or use tax imposed on every motor vehicle by Section 4281i-2 of the Statutes.

Frequent changes in the statutes relating to motorcars have created confusion, and the lack of related codification makes interpretation and application difficult. A detailed consideration of the growth of the law and the development of regulation of motor vehicles appears necessary to a solution of the question presented.

The first act, Chapter 122, Acts of 1904, relating to motorcars only prescribed a maximum speed of 15 miles an hour and provided protection for frightened horses. The next act, Chapter 81, Acts of 1910, modified the regulations and provided for the registration of motorcars with the Secretary of State, who issued a metal disc, not over two inches in diameter, containing the registration number, which was to be affixed to the car. There was a further revision in 1914 (Chapter 69), and an amendment in 1918 (Chapter 27). Then came an elaborate revision in 1920, which is the basis and continues as a part of the current Statutes, designated as Chapter 88b, Section 2739g-1 et seq. For the first time an owner was required to register his machine with and pay the fees to the county court clerk of his county as the agent of the State Tax Commission. For the first time also a distinction was made between passenger cars and trucks. A car primarily designed for carrying passengers and having provisions for not more than seven persons was classified as a passenger automobile and all others as trucks. Different fees were provided for the two classes, those for trucks being graduated. In 1922 the Act of 1920 was amended so as to require the registration to be with the circuit court clerk instead of the county court clerk. Acts of 1922, Chapters 49 and 87. Further amendments by Chapters 79 and 80 of the Acts of 1924 have no relation to the present question; nor do Chapters 77 and 78 of the Acts of 1924, except to place the registration back with the county clerk. Chapter 81, Acts of 1924, is material. It recognized the business of transporting passengers for compensation by motor vehicles over regular routes or between fixed termini and established its regulation by the State Highway Commis-

sion. Certain fees were required to be paid for such motor vehicles and business "in addition to the fees now required to be paid to the county clerk or other proper officer under the law for issuing automobile licenses in procuring licenses." Section 26.

In 1926 there were several amendments. Our case is not affected by Chapters 109, 110, 113 or 114; but Chapter 111 recognized three classes of motor vehicles, namely: (1) passenger cars; (2) those "engaged in hauling passengers for hire," and (3) trucks. The Act changed registration fees for trucks and established regulations concerning weight and width of automobiles and other features not material here. Chapter 112 of the Acts of 1926 repealed, amended and re-enacted Chapter 81 of the Acts of 1924, which regulated the transportation of passengers for hire. It required the payment of substantial fees, based upon carrying capacity and $10 for a tag or plate to be issued by the Commissioner of Motor Transportation and carried on each such motor vehicle. Section 28 of the Act, which is now Section 2739j-28, Statutes, is as follows:

"On a motor transportation company operating between fixed termini or over a regular route complying with the provisions of this act and paying all of the above fees, all local, municipal and state license fees now in force shall cease to be operative as to them and shall also be in lieu of fee now paid to the county clerk for license plates, except the municipalities and other local subdivisions may make reasonable local police and traffic regulations subject to any and all state traffic regulations within their boundary, not inconsistent with the provisions of this act."

This 1926 Act declared all conflicting laws to be repealed and, as we have stated, expressly repealed Chapter 81 of the Acts of 1924, which dealt with the same subject and contained the express provision that the fees therein prescribed were additional to those provided by the Act of 1920, as amended, which required the registration of automobiles of all kinds with the various county court clerks. Here then is a comprehensive code taxing, regulating and fully dealing with a class of motor vehicles not specifically described or recognized as different from trucks in the Act of 1920 and its various amendments, all of which dealt with private motor vehi-

cles generally. There is another act of the same session, Chapter 111, Acts of 1926, which, as above stated, specifically dealt with trucks. It recognized motor vehicles hauling passengers for hire as in a different class.

In 1928, Chapter 109 authorized the issuance of certificates of convenience and necessity for the transportation of persons for hire in interstate commerce and for the regulation of that class of transportation under the authority of and in accordance with the provisions of the laws of the United States.

In 1930 there were a number of changes made in the law relating to motor vehicles, but only Chapter 75 amending Chapter 112 of the Acts of 1926 and Chapter 78 have any relation. The latter act added to the provisions of the 1926 Act requiring as conditions to the issuance of licenses and license plates by the Commissioner of Motor Transportation that there be filed with him a list of drivers employed by the carriers and bond securing payment for any judgment for damages which might be procured against the owner of the vehicles covered thereby. Chapter 75 added provisions as to the operation of motorcars engaged in the transportation of persons for hire and changed the fees which were payable under the 1926 Act.

In 1932, of the several acts relating to motor vehicles, only two have any relation here. Chapter 101 changed the fees payable for each motorcar used primarily for the transportation of persons for hire. Chapter 104, without express amendment of any existing law, made extensive provisions for further regulation of the transportation of persons and property for hire on the highways of the state. This act accentuates the distinction which had been theretofore drawn between motor vehicles used by common carriers and automobiles used privately and definitely required to be registered with county clerks. It subjects the former to more definite and direct control by the State Tax Commission.

In 1934, Chapter 101 reduced license and registration fees for ordinary passenger cars, and Chapter 102 changed the fees for trucks. Chapter 103 amended Chapter 104, Acts of 1932, by levying an excise tax based upon mileage of cars used for the transportation of persons for hire. It likewise changed existing regis-

tration fees and licenses based upon seating capacity. Chapter 107 amended the statute with reference to the duties of county clerks concerning the registration of automobiles with and the collection of fees and the issuance of plates by them, but made no reference whatever to vehicles required to be registered with the Commissioner of Motor Vehicles. Chapter 19 of the 1934 Extraordinary Session of the legislature again changed the registration fees for ordinary passenger cars and in addition imposed on every motor vehicle, subject to license in the state, a tax equal to 3 percent of the retail sales price. Chapter 20 again recognized the difference between trucks and automobiles mentioned in Section 2739g-2 of the Statutes (ordinary automobiles) and those engaged in hauling passengers for hire. It changed the registration fees for trucks and imposed the 3 percent sales tax on them.

In 1936, Chapter 64 modified the statute relating to the operation of motorcars carrying passengers for hire. Chapter 65 again changed registration fees for ordinary passenger automobiles, and Chapter 66 did away with all such fees and licenses except $4.50 registration fee and 50 cents for the clerk for ordinary passenger cars, and $2 for each motorcycle. Other acts are not material.

In 1938, there was additional legislation relating to the operation of motorcars, licenses and fees and the protection of patrons by requiring insurance indemnity from common carriers required to be registered with and licensed by the director of motor transportation. In 1940 only changes were made in the fees for trucks and for busses and trucks used in religious work. In making these changes there was an express exception of motor vehicles engaged in hauling passengers for hire as being of a different classification.

Throughout this maze of amendments and new enactments there stands out clearly, beginning with 1926, a different treatment of motor vehicles used by common carriers for transportation of passengers between fixed temini. Though there has never been a specific statement that such automobiles do not have to be registered with the county clerks as was originally required, that portion of the statute was clearly repealed by the numerous conflicting acts. As pointed out, beginning with 1926 those vehicles have been definitely regarded inde-

pendently of ordinary passenger cars and of trucks. It is conceded by the Attorney General that the provisions of Section 2739o-5, Kentucky Statutes Supplement 1939, exempt the owner of buses fiom the payment of taxes and fees required when it registers them. It seems to us that the relief from the payment of those fees, including that which the county clerk would receive for his services, and the issuance of licenses and license plates by the Commissioner of Motor Vehicles, together with the vast development of this mode of transportation, with the interchange of busses over different routes in different counties, all establish that it was not the intention of the legislature that such busses or vehicles be registered with any county clerk under the terms of Section 2739g-2a. The exacting control of common carriers of passengers by motor vehicle has been substituted for the police regulation embraced in the requirement of registration with and issuance of plates by the several county clerks.

But the method of registration with the Commissioner of Motor Transportation, and resulting identification by tags issued by that officer, cannot have the effect of exempting such vehicles from the payment of the usage tax prescribed by Section 4281i-1 et seq., of the Statutes, since the reference in Section 4281i-2 to registration with County Clerks merely states the time of payment, and registration with the Commissioner of Motor Vehicles would by implication be the time of payment on busses registered with him.

The judgment being in accord with these views, it is affirmed.