## Reeves, Com'r of Revenue, v. Deisenroth et al.

Dec. 19, 1941.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellant.

H. V. McChesney, Jr., Leslie W. Morris and Marion Rider for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

Rights of nonresident owners of motor vehicles to operate them in Kentucky without complying with our statutes relating to registration and taxation of such vehicles is the question to be decided. Primarily involved is the construction of Section 2739g-5, of the Statutes, reading as follows:

"A non-resident owner who has complied with the laws of the state, province, or district of his residence relating to registration of automobiles or motor vehicles, and who displays the requisite plates and holds the requisite receipt or certificate

of registration as required by his resident state, province or district, if such state, province or district does not require registration of non-resident owners temporarily therein, shall be exempt from registration in this State for the same period of time as is granted to non-resident owners of his state, province or district by the laws and regulations thereof. Provided that non-residents shall observe and obey all traffic regulations of this State, and provided further, that registration in any other state, province or district shall not in any wise relieve any owner, resident in this State from the penalties hereinafter provided for violations of this act.''

The State of Ohio has a statute like it. Section 6306, 6306-1, General Code of Ohio. Purporting to act for the Commonwealth of Kentucky under the foregoing statutes, a ''Memorandum of Reciprocity Agreement'' was executed by the Director of the Division of Local Relations of the Department of Revenue and the Commissioner of Revenue of Kentucky, of the one part, and the Ohio Reciprocity Commission of Ohio, consisting of the Attorney General, Director of Highways, and a designated member of the Public Utilities Commission on some undisclosed date before the filing of this suit on January 8, 1939. The instrument is as follows:

''It is mutually agreed between the Commonwealth of Kentucky acting through its Director of Division of Local Relations of the Department of Revenue and the Commissioner of Revenue acting by authority of Section 2739g-5 of Carroll's Kentucky Statutes, 1936 Edition, and the Ohio Reciprocity Commission consisting of the Attorney General, Director of Highways and a designated member of the Public Utilities Commission of Ohio, as authorized by Section 6306-1 of the General Code of Ohio, that in order to facilitate the convenience of their citizens and the motor vehicle movements in interstate commerce of their respective residents between and through their combined geographical territories, the Commonwealth of Kentucky with respect to interstate operations of Ohio motor vehicles within Kentucky territorial limits, agree that when owners of motor vehicles have paid all their proper motor vehicle fees, including license, weight,

public utility and driver's fees, and otherwise, for their equipment in their respective states of domicile, shall be granted exemption from all like taxes and fees in the other state; provided this agreement shall not be construed to grant exemption to any person required by law to pay property taxes or annual regulatory fees of a nominal amount such as imposed by Section 2737j-69, Carroll's Kentucky Statutes, 1936 Edition. It is mutually agreed that no such Kentucky or Ohio motor vehicle, other than a motor vehicle operated by an owner in the transportation of the owner's commodities shall be entitled to the benefits of this agreement with respect to operations in the sister state except, as it shall, where lawfully required have and possess with respect to such operations any requisite permit or authority under Kentucky or Ohio laws and also the certificate of public convenience or equivalent authority under the Federal Motor Carrier Act of 1935, 49 U. S. C. A., Section 301 et seq., nor shall this agreement supersede or suspend in any respect state or local safety rules and regulations governing motor vehicles generally in the respective jurisdictions. Neither state shall be deemed to waive any of the foregoing taxes or fees in so far as the same relate to intrastate operations within their respective territorial limits. This agreement shall become effective June 30, 1939, and so remain until terminated in part or in whole upon five days notice by either party. With the effective date of this agreement all previous agreements of reciprocity respecting motor vehicles between Ohio and Kentucky shall become terminated.''

An interested citizen and a person engaged in intrastate transportation by motor vehicles for hire filed this suit against the Commissioner of Revenue seeking a declaration of rights and praying that the court declare the defendant had no right to enter into an agreement waiving the collection of statutory fees and licenses of nonresident owners operating motor trucks in Kentucky. Another taxpayer interpleaded and sought an injunction restraining the defendant from ''entering into the proposed contract.''

The ambiguity of the agreement makes it difficult to determine just what it means. It is obvious that no

such contract or agreement can have the force of law. It is conceded by all parties, and the trial court so declared, that no officer has the power to vary or waive any statutory law, and that under the reciprocity statute those charged with the duty of enforcing the laws relating to the regulation and taxation of motor cars can only state an agreement with the officers of another state what those laws are and what the interpretation of the administrative agency is. Anything beyond that is ineffectual. Ohio has a similar reciprocity statute with a provision that designated officers may enter into agreements with other states in respect thereto. Sections 6306, 6306-1, General Code of Ohio. Reciprocity statutes with varying conditions exist in many other states. 5 Am. Jur., "Automobiles," Section 149; 42 C. J. 670; Annotations, 82 A. L. R. 1091.

These problems of the executive officers arise from the indefiniteness of the Statutes which create doubt as to how far the reciprocity provision extends. By this case they lay the problem on the bench of the judiciary for solution.

The legislative history of Section 2739g-5 of the Statutes reveals its limitations and discloses the confusion. It was originally a part of a general act of 1920 authorizing the registration of automobiles of all classes, the issuance and exhibition of license plates, etc. It also regulated the use of the public roads in relation to speed, signals and operation. Chapter 90, Acts of 1920. At that time, as is well known, there was relatively little use of automobiles in the business of public transportation. At any rate, that subject was not within the scope of the act. The forerunner of the 1920 act was Chapter 81, Acts of 1910, which defined motor vehicles, provided for their registration in the office of the Secretary of State and regulated the use and speed thereof. It excepted from the provisions respecting registration in this state nonresidents who had complied with similar laws in their own states and whose automobiles carried identification tags evidencing such compliance. In 1926, the act of 1920 was amended in several particulars and the reciprocity provision was changed to give exemption from registration to nonresident cars for a period of not exceeding thirty days. However, the amended act required a nonresident to register his automobile in this state when same was used in any business

or commercial activity before he was authorized to operate it in Kentucky. Chapter 109, Acts of 1926. But in 1928, by an act relating exclusively to this section of the statute, the 1926 provisions were repealed and the law re-enacted just as it read in the 1920 act. And it has so remained. The section is still a part of the chapter dealing with general registration of motor cars and the procurement of identification tags from the several county clerks of the state. It is a regulation under the police power and not a revenue measure. Gray v. Methodist Episcopal Church, South, Widows and Orphans Home, 272 Ky. 646, 114 S. W. (2d) 1141.

In 1924 the legislature began to take cognizance of the use of motor cars for transportation for hire and to impose regulations and special taxes. Chapter 81, Acts of 1924. These conditions have from time to time been modified to meet the developments and the increased need for regulation. Some of the terms of the general statute, of which Section 2739g-5 is a part are not applicable to commercial cars. Furste v. Dixie Traction Company, 286 Ky. 336, 150 S. W. (2d) 913. Those various statutes must be construed in relation to the reciprocity statute by a special consideration of the exemptions contained in each of them and the absence of reference to Section 2739g-5 of the Statutes, which we are now considering. Herein lies the difficulty.

Section 2739j-1, et seq., Statutes (Chapter 112, Acts of 1926) forbid the use of highways for the transportation of passengers for hire except under a system of permits and certificates. Certain exceptions are declared including taxicabs and city buses making casual trips. Section 2739j-27a, Statutes. Section 2739g-80, et seq., Statutes (Chapter 106, Acts of 1932) establish limitations of weight and size and regulate the operation of trucks engaged in the transportation of freight. Section 2739j-42, et seq., Statutes (Chapter 104, Acts of 1932) regulate common carriers and contract carriers, and specifically declare the act and every part of it to apply to interstate commerce, which would include foreign cars and operators. The definition of a contract carrier expressly excludes a person transporting only his own property and one who makes an occasional trip to transport persons or property of other persons for hire. These statutes and some others of like character make specific exemptions from their operations. But

none of them mention motor cars of nonresidents. However, in 1934, by Chapter 106 (Section 2739g-5a, Statutes) the legislature, by an independent act which did not refer to any existing statute, made it unlawful for any "resident, person, firm or corporation, operating an automobile or other motor vehicle on and over the highways of this Commonwealth, to purchase, secure or license said automobile or motor vehicle in any State other than the Commonwealth with intent to defraud the Commonwealth of Kentucky of the license tax due thereon." After providing that the use of a license of another state by a resident of Kentucky shall be prima facie evidence of guilt, and establishing a penalty, the act declares:

"Provided that nothing in this bill shall be construed to prevent the reciprocal agreements now in effect between the states." Section 2739g-5d.

We do not know what agreements are referred to as none had theretofore been authorized by the legislature. If this has reference to Section 2739g-5, Statutes, then this act would indicate that it meant only the ordinary operating license and registration.

All of the foregoing and other statutes regulating commercial motor cars were enacted after the reciprocity section, 2739g-5, was re-adopted in 1928. With full knowledge of the heavy traffic in the state by nonresident cars engaged in commercial pursuits, the legislature made no other provision for reciprocal immunity. It must be assumed then, particularly in the light of Section 2739g-80, et seq., Chapter 106, Acts of 1932, that the legislature has through the years treated the term "registration" used in Section 2739g-5 as broad enough to embrace commercial vehicles, as, indeed, the definitions of the first section of the act of which it is a part does.

The reciprocity clause is that where the state of a nonresident of Kentucky "does not require registration of non-resident owners temporarily therein," then Kentucky will not require it. Thus by indirection it is provided that the exemption from the terms of our statute extends only to nonresidents temporarily operating in Kentucky. It certainly was not intended to permit them to do business regularly in this state without complying with the regulations and paying the taxes which our own citizens must observe and pay. Any other con-

struction would make the reciprocity provision unconstitutional because it would be a discrimination against our own citizens and would violate the equality provision of Section 3 of our Constitution.

The predecessor of our current statute, that is, the Act of 1910 above referred to, was challenged in City of Newport v. Merkel Bros. Company, 156 Ky. 580, 161 S. W. 549. The case involved the right of Newport to require an annual license tax to be paid by a Cincinnati company using its motor cars to make deliveries of its own products in Newport. It had complied with all appropriate Ohio laws and claimed exemption under the Kentucky reciprocity statute, notwithstanding an ordinance imposing such a license. The court held that the exemption of the statute rendered the ordinance invalid. We held the act to be constitutional and not discriminatory of the citizens of Kentucky and valid under the doctrine of comity between states. The decision rests primarily upon the conclusion that there was a reasonable basis for classification by drawing a distinction between those who used the roads regularly and those who used them temporarily. The same principle has been applied to ordinances which impose license taxes on motor cars owned by nonresidents of a city and those regularly operating on its streets as distinguished from an occasional use. Johnson v. City of Paducah, 285 Ky. 294, 147 S. W. (2d) 721, and cases cited.

Broad considerations of comity between the states, the desirability and necessity for co-operation, and the common policy in regard to convenience of the traveling public, both in pleasure and in commerce, and the practical administration of the laws are cogent considerations. When they, and the whole body of the motor vehicle law, are brought to bear upon the problem they support the conclusion that it was the intention of the legislature, considering also its re-enactment in 1928 eliminating the requirement that nonresidents register cars used in business, to have the reciprocity provision contained in Section 2739g-5 of the Statutes read into and with all other regulatory and licensing statutes. At the same time those considerations negative the idea that a nonresident should be permitted to engage in business in the state, or use the highways of the state for that purpose, free from domestic regulations and taxation, working to the disadvantage of our own citi-

zens. It cannot be believed that the legislature ever intended to permit regular commercial activity on the highways of the state without complying with the laws relating thereto, except it be temporary or casual. It is generally held by the courts under the several reciprocity statutes that one coming into the state on an isolated occasion or in the incidental transportation of persons or property is not bound to comply with statutory laws of a sister state requiring permits, licenses, etc., to be procured by persons engaged in transportation on the highways. Annotations, 123 A. L. R. 230. See, also, Annotations, 82 A. L. R. 1091, ''Constitutionality, construction, and effect of statutes in relation to foreign owned vehicles operating within the state.''

Our conclusion is that the reciprocity provision of Section 2739g-5 of the Statutes embraces the registration, licensing and granting of permits and certificates of convenience and necessity of all motor cars of non-residents, whether used for private or personal purposes, or in a commercial enterprise. Giving the phrase ''temporarily therein'' the common meaning when associated with the subject matter of temporary use of the highways of Kentucky, when such motor cars are operated on occasional or casual or infrequent or transitory trips into or through Kentucky, and the owner's home state allows similar exemptions, then they do not have to register or license them in Kentucky or procure permits or certificates required under other conditions. The provision does not exempt from any regulation or tax a motor car operated regularly or continuously or more than occasionally in Kentucky. They are subject to the same laws to which residents of Kentucky are subjected.

The foregoing has reference to automobiles used in the transportation business. The statute of which Section 2739g-5 is a direct part relates to private or personal motor cars, so the exemption, when it becomes operative upon the conditions being met, applies without any other limitation. It will exempt all nonresident privately owned cars while engaged in the transportation of the owner or his representative or of his property to the same extent such vehicles of residents of Kentucky are exempt while in the other state.

Part of the argument is particularly addressed to the construction in this relationship of Section 2739j-94, which exempts from the provisions of the statute gov-

erning the business of transporting passengers for hire in motor vehicles, cars which operate exclusively within the limits of a city or town or within ten miles of its limits. The entire act (Section 2739j-42, et seq.) and all others, except where otherwise specifically provided, relate to the operation of motor cars in Kentucky and the cities of the state. Therefore, this exemption cannot be construed to embrace cars licensed or registered in any city outside of Kentucky except as same may come within the general exceptions above outlined.

Although expressed in different language and more concretely, the foregoing is what the trial court ruled with the addition that so much of the agreement entered into by the officers of Ohio and Kentucky as contravenes the ruling is of no effect. We concur in that conclusion also.

The judgment is affirmed.

Whole Court sitting.