GANT, Justice.
Budget Rent-A-Car of Cincinnati, Inc., among its operations, maintains an automobile rental outlet at Greater Cincinnati Airport, which is located in Boone County, Kentucky. Rentals at that site comprise some 60% of the total business of the corporation. Pursuant to the applicable statutes and regulations of this state, an allocation formula was devised and agreed to by which Budget registered some 19% of the vehicles used at this location in Kentucky, the remainder being registered in Ohio. This action concerns the usage tax payable to the Commonwealth under the applicable law of the state.
The statute pertaining to the question is:
KRS 138.463. Collection of tax on U-Drive-It. — (1) A holder of a certificate as required under KRS 281.615 to operate as a U-Drive-It as defined in KRS 281.014 may pay the usage tax as provided in KRS 138.460 or, subject to the provisions of subsection (2), may pay a usage tax of five per cent (5%) levied upon the amount of the gross rental or lease charges paid by a customer or lessee renting or leasing a motor vehicle from such holder of the certificate.
(2) A holder of a certificate shall pay the usage tax as provided in KRS 138.-460 unless he shows to the satisfaction of the Cabinet that he is regularly engaged in the renting or leasing of motor vehicles to retail customers as part of an established business. Persons first engaging in the renting or leasing of motor vehicles to retail customers shall, in addition to obtaining a certificate required under KRS 281.615, demonstrate to the satisfaction of the Cabinet that they are prepared to qualify under the standards set forth in this subsection.
(3) In the event the holder of such certificate qualifies under subsection (2) and elects to pay the usage tax by the alternate method as provided in subsection (1), he shall present his certificate to the county clerk at the time the motor vehicle is offered for registration in Kentucky and the following provisions shall be applicable.
(4) The tax shall be the direct obligation of the holder of the certificate but it may be charged to and collected from the customer in addition to the rental or lease charges. The tax due shall be remitted to the Revenue Cabinet.
The applicable regulation in this case is 103 KAR 44:020(6)(b):
Fleets of vehicles operating under a U-Drive-It permit which are registered *201 pursuant to an allocation formula by the Department of Transportation may, upon approval of the Department of Revenue, elect to pay the five per cent (5%) usage tax on revenue derived from rental or leasing of all vehicles rented or leased in Kentucky.
Under KRS 138.463(1), Budget chose to operate under this second option, which provides a usage tax of 5% upon “gross rental or lease charges paid by a customer or lessee,” rather than paying the usage tax on the vehicles registered in Kentucky. However, they paid this optional tax only on the rental or lease charges on those vehicles registered in Kentucky, and not on the rental or lease charges for the entire fleet of U-Drive-Its rented at the Kentucky location. Relying upon the above quoted regulation and statute, and after a complete audit of Budget, Revenue assessed a deficiency of $255,526, plus penalties and interest, contending the regulation and the statute clearly required under the option selected by Budget that the 5% usage tax applied to all Kentucky rentals, not merely to rentals of those vehicles registered in the state.
The audit conducted by Revenue on the records of Budget disclosed that Budget had collected the 5% usage tax on all vehicles in the rental fleet, irrespective of its registration, applying the tax to the “time and mileage” charge and the collision insurance charge, but not to other charges such as the “drop-off” charge in the rental contracts. However, Budget had paid the tax thus collected on only the vehicles registered in Kentucky, pocketing the remainder.
The Board of Tax Appeals upheld the deficiency assessment, plus penalty and interest, but its Opinion and Order, written by Edward P. Prichard, Jr., Chairman, was reversed by the Franklin Circuit Court and that reversal was upheld by the Court of Appeals.
STATUTORY CONSTRUCTION
KRS 138.463 provides two alternate methods of paying taxes for U-Drive-It businesses operating in Kentucky. They may pay the usage tax of 5% provided under KRS 138.460 on the value of registered vehicles at the time of registration; or, they may pay a usage tax of 5% on the “gross rental or lease charges paid by a customer or lessee renting or leasing a motor vehicle ...” There is no language of limitation if the company elects to pay its tax under the second alternative and yet the interpretation urged upon us and adopted by Budget (and by the Court of Appeals) would add to the second alternative, after the words “motor vehicle,” the phrase “Registered in Kentucky.” We cannot concur with such equivocation, and find no connection in the statute between the two alternatives which would make the first alternative an incidence of the second. Cf. Furste v. Dixie Traction Company, 286 Ky. 336, 150 S.W.2d 913 (1941).
The alternative methods are quite simple. Once the allocation formula is determined, as provided by 103 KAR 44:020, the U-Drive-It operator may pay the usage tax provided by KRS 138.460 at the time of registration, on all vehicles registered in Kentucky, and exclude those vehicles registered in another state; or they may elect to pay the 5% usage tax derived from leases entered into in this state on all vehicles in the rental fleet which are leased in Kentucky.
To hold otherwise would permit Budget to select the best of both alternatives. For example, the record divulges that there was annually a vast difference between the percentage of vehicles registered in Kentucky and the percentage of rental of those vehicles when compared to the entire fleet rental. Also, for two periods, one of four months and one of five months, no tax was paid at all inasmuch as no Kentucky vehicle was rented out of the entire fleet. Clearly, the statute was not intended to permit Budget, or similar enterprises, to do business in this state on a regular basis without paying a fair and proper tax for that privilege. Cf. Reeves v. Deisenroth, 288 Ky. 724, 157 S.W.2d 331 (1941). Further, KRS 138.455 states that all taxes imposed under *202 the applicable sections of the chapter are taxes “on the privilege of using a motor vehicle upon the public highways” of this state. Under our Constitution, the revenues from such taxes are mandated to be placed in the road fund.
CONSTITUTIONALITY
The principal thrust of Budget’s argument herein is that the regulatory scheme enacted by Revenue under the statute and under the applicable regulations are viola-tive of the United States Constitution, art. 1, § 8, cl. 3, the interstate commerce clause. Budget’s contention was adopted by the Franklin Circuit Court and the Court of Appeals, but we do not agree. Although the law relating to the commerce clause has undergone cyclical changes over the past 50 years, one phrase has been repeatedly echoed in the halls of the Supreme Court of the United States. That phrase is: “It is not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business.” Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823 (1938).
The criteria which are to be applied to any state tax relating to interstate commerce, by whatever name such tax may be levied, were set out in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Those are: (1) There shall not be discrimination between foreign and state corporations; (2) There must be local activities within the taxing state to form sufficient nexus to justify the tax; (3) The tax must be properly apportioned to local activities; and (4) The tax must be related fairly to services provided by the state. Also, this case goes on to say, such tax would be upheld even though the activity was generated exclusively by interstate sales.
Applying these criteria to the case before us, we find distinct compliance with each of them. First, there is no discrimination between this Ohio corporation and any Kentucky corporation operating in the same line of business. In fact, no discrimination is even urged by the respondent. Second, the entire activities of Budget in renting its fleet at its airport location in Kentucky are intrastate, not interstate, giving more than sufficient connection, or nexus, to this state in the operation. The fact that the customer, or lessee, may go north, south, east or west from his point of Kentucky origin is his choice, not that of Budget. Also, in whichever direction he goes, he operates upon the highways of this state for some portion of the trip. This is a total answer to the third standard. The apportionment by mileage urged by Budget is not required under the commerce clause, especially where there is this volume of local activities. See Capitol Greyhound Lines v. Brice, 339 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053 (1950). Finally, the tax is on the privilege to use the highways in this state, not on the use itself. Although Budget may charge by the mile driven, the tax is a flat percentage charge for the privilege.
Of course, as Budget readily admits, there is no question of double taxation herein as Ohio charges no registration tax or usage tax on any of the Ohio licensed vehicles in the fleet.
STATUTORY APPLICATION
We further affirm the Board of Tax Appeals in its opinion that the tax applies to all charges, including “total time and mileage,” “full collision insurance,” “personal accident insurance,” and “drop-off charges,” as set out in the lease agreement with Budget as lessor and the customer as lessee. We find no ambiguity in a statute which assesses the usage tax upon “gross rental” and “gross ... lease charges.” As any dictionary definition reads, “gross” means “without deductions.” If it is a charge contained in the lease, by clear meaning that is a “lease charge.”
We reverse the Court of Appeals on the issues herein disposed of and remand this case to the Franklin Circuit Court for further proceedings dealing with penalty assessment, statute of limitations, and all *203 other issues originally raised but not disposed of in that court.
All concur.